JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Jacqueline Hanna-Duffield, appeals her conviction for aggravated burglary. After a thorough review of the record, and for the reasons set forth below, we vacate appellant's conviction.
 {¶ 2} On April 4, 2007, a Cuyahoga County Grand Jury indicted appellant on two counts. Count One charged her with aggravated burglary under R.C. 2911.11(A)(1), a first degree felony. Count Two charged felonious assault under R.C. 2903.11, a second degree felony. On April 30, 2007, at her arraignment, appellant pleaded not guilty as charged to all counts of the indictment.
 {¶ 3} On October 16, 2007, the state moved to dismiss the felonious assault count, and a jury trial began. The trial court granted the state's motion and dismissed the second count. On October 18, 2007, the jury returned a verdict of guilty on the aggravated burglary charge. The trial court ordered a presentence investigation report, and a sentencing date was set. On November 19, 2007, the court sentenced appellant to one year of community control sanctions.
 {¶ 4} The facts that gave rise to this appeal began on February 5, 2007. Amanda Bellini ("the victim") lived in a first floor unit of a multi-family dwelling ("the apartment") in Cleveland. Appellant and her daughters lived in a second floor unit. The apartment has a small common area that leads to the first and second floors. *Page 4 
 {¶ 5} According to the victim, on February 5, 2007, appellant arrived at her unit looking for the landlord, Mike Hanna ("Mike"), who is also appellant's brother and the victim's fiancé. Appellant was having a problem with the heat in her unit. The victim informed appellant that Mike was not there. Appellant left, but shortly thereafter, her daughter, Alex Duffield ("Alex"), arrived at the victim's unit to talk about the heat problem. The victim started a tape recorder to record their conversation because she feared an altercation with the parties because of an incident the previous night.
 {¶ 6} The victim testified that appellant returned to her unit and threatened her. According to the victim's testimony, she stood inside her unit, while appellant and Alex stood in the common area. Appellant and Alex then forced their way into the victim's unit. Appellant tried to grab the victim, who defended herself by pushing appellant to the ground. Appellant, Alex, and the victim continued to fight near the doorway between the living room and kitchen.
 {¶ 7} Alex testified that the problems began when the heat in their unit started turning on and off. Alex went to talk to the victim. Alex asked the victim about the heat, but the victim told her she did not know about it. According to Alex, the victim told her that she was using a tape recorder and swung a black object at her, then fell on top of Alex. Appellant showed up and tried to pull the victim off Alex, and the victim pulled appellant's hair. Alex testified that she did not enter the victim's unit. *Page 5 
 {¶ 8} Roberto Lopez (the boyfriend of appellant's niece), testified for the defense. He was at appellant's unit the night of the incident and watched the argument from the hallway. Lopez testified that he did not see appellant or Alex enter the victim's unit, nor did he hear appellant make any threats.
 {¶ 9} Appellant testified on her own behalf. She stated that she went to speak to her brother, Mike, but he was not home. She returned to her own unit, and her daughter, Alex, went to talk to the victim. Appellant heard arguing so she returned to the victim's unit. She admitted arguing with the victim, but denied ever entering her unit. She maintained that she, Alex, and the victim argued in the common area. She saw the victim swing at Alex and fall down on top of her. She tried to pull the victim off Alex. The victim responded by grabbing appellant.
 Review and Analysis {¶ 10} Appellant brings this appeal asserting four assignments of error for our review. Because Assignment of Error IV is dispositive of this matter, we address it first.
 {¶ 11} "IV. Defendant's aggravated burglary conviction is against the manifest weight of the evidence."
 {¶ 12} Appellant argues that her aggravated burglary conviction is against the manifest weight of the evidence. We find merit in this argument.
 Standard of Review: Manifest Weight *Page 6 {¶ 13} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squirev. Cleveland (1948), 150 Ohio St. 303, 345, 82 N.E.2d 709.
 {¶ 14} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v.Florida (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, where the court held that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 15} The court in State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the *Page 7 
conviction must be reversed and a new trial ordered. * * * See Tibbs v.Florida [supra]." State v. Martin, supra, at 175.
 {¶ 16} The jury convicted appellant of aggravated burglary. Under R.C. 2911.11(A)(1), "no person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person * * * is present, with purpose to commit in the structure * * * any criminal offense, if * * * the offender inflicts, or attempts or threatens to inflict physical harm on another." R.C. 2911.21 defines "trespass" as requiring that the offense be committed knowingly, recklessly, or negligently.
 {¶ 17} Following review, we conclude that the finding that appellant "knowingly trespassed" inside the victim's unit is against the manifest weight of the evidence. *Page 8 
 "Knowingly Trespassed" {¶ 18} The only evidence presented by the state that appellant "knowingly trespassed" in the victim's unit is the victim's testimony. According to the victim, appellant came to her unit looking for Mike, but left after learning Mike was not there. However, shortly thereafter, Alex arrived at the victim's door to talk about the heat problem. According to the victim, appellant then returned to the victim's unit and threatened her. The scuffle started as she stood inside her unit, while appellant and Alex stood in the common area. According to the victim, appellant and Alex eventually forced their way into her unit. Appellant tried to grab the victim, who stated that she had to defend herself by pushing appellant to the ground. Finally, the victim testified that she, appellant, and Alex continued to fight, which included mostly hair pulling, near the doorway between the living room and kitchen.
 {¶ 19} Although the victim testified that appellant "forced" her way into the victim's unit, the remaining witnesses testified that the scuffle never entered the unit. Alex testified that she and appellant did not enter the victim's unit. Mr. Lopez testified that he watched the scuffle from the hallway and did not see appellant or Alex enter the victim's unit.
 {¶ 20} Appellant testified that she returned to the victim's unit only because she heard arguing and wanted to check on her daughter. Appellant denied ever *Page 9 
entering the victim's unit and insisted that she, Alex, and the victim argued in the common area only.
 {¶ 21} Upon a review of the foregoing testimony, we find that the jury clearly lost its way when it found that appellant "knowingly trespassed." We find that appellant's aggravated burglary conviction is against the manifest weight of the evidence. Accordingly, appellant's fourth assignment of error is sustained.
 {¶ 22} Our disposition of the fourth assignment of error renders the remaining assignments of error[1] moot.
 {¶ 23} Appellant's conviction is vacated, and she is ordered discharged.
It is ordered that appellant recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and PATRICIA ANN BLACKMON, J., CONCUR
 APPENDIX Appellant's remaining Assignments of Error: *Page 10 
I. The Appellant's State Constitutional Right to a Grand Jury indictment and
State and Federal Constitutional Rights to Due Process were violated when the indictment omitted an element of the offense.
II. The trial court erred in failing to instruct the jury on the requisite mental state for an element of the offense.
III. Defendant's aggravated burglary conviction is not supported by sufficient evidence.
[1] Appellant's remaining assignments of error are included in the appendix to this Opinion. *Page 1